# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

JULIA I. RIX,

　　　　　　*Plaintiff,*

　　v.

POLSINELLI PC, *et al.*,

　　　　　　*Defendants.*

Civil Action No. 23-03062 (AHA)

## <u>Memorandum Opinion</u>

Julia Rix sues the law firm Polsinelli PC and two of its partners, Dov Scherzer and Gabriel Dabiri, asserting sexual harassment, hostile work environment, and related claims from when she was a partner at the firm. The defendants have filed motions to dismiss and compel arbitration for certain claims. For the reasons below, the Court denies the motions.

## I.　　Background[1]

Rix is an attorney whose practice focuses on cross-border counseling. ECF No. 1-2 ¶ 26. The complaint alleges Polsinelli recruited her to become an equity shareholder in the firm's D.C. office in 2021, promising she could benefit from its international connections and resources. *Id.* ¶ 28. When Rix joined the firm, she was instead subject to repeated personal and sexual advances by two partners with influence over the success of her practice, Dov Scherzer and Gabriel Dabiri. *Id.* ¶¶ 31–75.

---

[1]　As required at the pleading stage, the Court accepts the complaint's well-pled allegations as true and draws reasonable inferences in Rix's favor. *See Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1129 (D.C. Cir. 2015).

The complaint describes numerous specific incidents at work and professional events in D.C., where Rix worked, New York, where Scherzer and Dabiri worked, and elsewhere in which Scherzer or Dabiri made comments about Rix's appearance and other suggestive remarks; repeat requests to go for drinks, dinner, or dancing despite Rix's rejections; efforts to join her in her hotel room; and unwanted physical contact. *Id.* All told, the complaint describes at least nine instances in which Scherzer asked Rix to dinner and drinks over the course of several months, overtly tied to his "growing affection" and "strong, unprofessional liking to Rix." *Id.* ¶¶ 34, 41. The complaint describes multiple instances in which Scherzer made efforts to join Rix in her hotel room, including one in which he was successful and kissed her without consent. *Id.* ¶¶ 63, 66. Scherzer's conduct continued after the unwanted kiss; he asked Rix to meet again and expressed his expectation for another kiss. *Id.* ¶¶ 67–68. The complaint also describes at least three instances in which Dabiri invited Rix dancing or to have drinks or dinner, including to "boldly express a sexual interest" in her and make physical contact with her. *Id.* ¶¶ 47, 58. At one professional event, Dabiri insisted on dancing with Rix, repeatedly touched her, and then made sexually charged passes at her after insisting they share a car home. *Id.* ¶ 58.

According to the complaint, Scherzer and Dabiri responded to Rix's rejection by denying her business opportunities, as they "time and again attempted to condition 'working deals together' upon her willingness to succumb to their demands for a personal (sexual) relationship." *Id.* ¶ 55. This impeded Rix's ability to generate business and succeed at the firm. *Id.* ¶ 56. Rix subsequently received her first negative performance review, which was conducted by partners who "regularly work with Scherzer and Dabiri and are frequently involved in high-level Firm administrative and personnel issues with a direct impact on Rix's performance review." *Id.* ¶ 59. As a result of the

review, the firm de-equitized Rix, decreased her compensation, and withheld money owed to her. *Id.* ¶ 61.

In May 2023, Rix reported the misconduct and, two days later, Polsinelli fired her. *Id.* ¶¶ 69, 71. The firm then withheld her remaining compensation for the year and her equity in the firm. *Id.* ¶¶ 72–73.

Rix sued Polsinelli, Dabiri, and Scherzer in D.C. Superior Court and they removed the case to this Court. *See* ECF No. 1. Rix's complaint alleges eight counts: (i) sexual harassment in violation of the D.C. Human Rights Act ("DCHRA") against all defendants; (ii) retaliation in violation of the DCHRA against Polsinelli; (iii) aiding and abetting violations of the DCHRA against Scherzer and Dabiri; (iv) hostile work environment in violation of Title VII against Polsinelli; (v) retaliation in violation of Title VII against Polsinelli; (vi) breach of contract against Polsinelli; (vii) intentional or reckless infliction of emotional distress against all defendants; and (viii) negligent infliction of emotional distress against Polsinelli. *See* ECF No. 1-2 at ¶¶ 76–130. Rix later voluntarily dismissed the sixth count, for breach of contract. *See* ECF No. 23. The defendants filed motions to dismiss and compel arbitration, which implicate all counts except count four. ECF No. 8; ECF No. 13.

## II. Discussion

To survive a motion to dismiss for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This standard is satisfied "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The Court "must take all the factual allegations in the complaint

as true," though it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

As a threshold matter, the defendants argue Rix's state claims are asserted under the wrong state's law—that is, Rix's five claims under the DCHRA and D.C. common law had to be asserted under Missouri law. *See* ECF No. 8-1 at 19–27. As explained below, the Court disagrees and concludes Rix has stated D.C. claims. Moreover, although the defendants do not contest Rix's Title VII hostile work environment claim may proceed in this Court, they argue that her Title VII retaliation claim and state law claims must proceed through arbitration. The Court disagrees there, too, because the application of the parties' arbitration clause to those claims is foreclosed by the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act.

### A. Rix Has Properly Asserted And Plausibly Pled DCHRA And D.C. Common Law Claims

The defendants argue that Missouri law governs Rix's state law claims based on Rix's employment agreement and, in the alternative, under choice-of-law analysis.

In a case premised on diversity or supplemental jurisdiction, this Court applies D.C. choice-of-law rules. *Mastro v. Potomac Elec. Power Co.*, 447 F.3d 843, 857 (D.C. Cir. 2006) ("When deciding state-law claims under diversity or supplemental jurisdiction, federal courts apply the choice-of-law rules of the jurisdiction in which they sit." (quoting *Ideal Elec. Sec. Co. v. Int'l Fidelity Ins. Co.*, 129 F.3d 143, 148 (D.C. Cir. 1997))). Under D.C. law, courts generally enforce contractual choice-of-law provisions "as long as there is some reasonable relationship with the state specified." *Ekstrom v. Value Health, Inc.*, 68 F.3d 1391, 1394 (D.C. Cir. 1995) (quoting *Norris v. Norris*, 419 A.2d 982, 984 (D.C. 1980)). In the absence of an applicable choice-of-law agreement, the Court conducts a choice-of-law analysis, which involves considering the "governmental interests" and which forum has the "most significant relationship." *Oveissi v.*

*Islamic Republic of Iran*, 573 F.3d 835, 842 (D.C. Cir. 2009) (quoting *Hercules & Co., Ltd. v. Shama Rest. Corp.*, 566 A.2d 31, 40–41 & n. 18 (D.C. 1989)). Here, neither a choice-of-law provision nor choice-of-law analysis support application of Missouri law over D.C. law.

The defendants say Missouri law applies, citing a provision of Rix's employment contract that says: "This Agreement shall be construed and interpreted under the laws of the State of Missouri." ECF No. 8-1 at 20. This language would presumably require the application of Missouri law to a claim that requires construction or interpretation of the employment agreement—such as the breach of contract claim Rix no longer pursues. But Rix's remaining claims do not arise under her contract and therefore do not require construction or interpretation of it; she asserts claims under state anti-discrimination and tort laws. Nothing in the contractual provision cited requires the application of Missouri law to those claims. *See, e.g., Minebea Co. v. Papst*, 377 F. Supp. 2d 34, 38 (D.D.C. 2005) (holding that provision stating agreement was "governed by and interpreted in accordance with" the law of a jurisdiction did not apply to tort claims); *Sandza v. Barclays Bank PLC*, 151 F. Supp. 3d 94, 107 (D.D.C. 2015) (same).

The defendants do not meaningfully contest that the terms of the choice-of-law clause do not encompass Rix's employment discrimination and tort claims. They instead point to broader language that appears in the agreement's forum-selection clause, which requires that "any actions related to this Agreement" be filed in Missouri. ECF No. 8-1 at 20. But, even assuming that broader language encompasses employment discrimination and tort claims, the use of that broader language as to forum selection but not choice of law cuts the other way.[2]

---

[2]    The defendants have explicitly disclaimed reliance on the forum-selection clause to challenge D.C. as a proper venue, arguing only that this Court should apply Missouri law. *See* ECF Nos. 26, 27.

Absent an applicable choice-of-law provision, choice-of-law analysis favors application of D.C. law, not Missouri law. Under the governmental interests analysis, courts "evaluate the governmental policies underlying the applicable laws and determine which jurisdiction's policy would be most advanced by having its law applied to the facts of the case under review." *Oveissi*, 573 F.3d at 842 (quoting *Hercules*, 566 A.2d at 41)). The complaint alleges Rix is a citizen of, and was recruited and hired to work in, D.C. ECF No. 1-2 ¶ 17. D.C. unquestionably has an interest in protecting its citizens and workers from sexual harassment, retaliation, and related tortious conduct by their employers. *Cf. Shaw v. Marriott Int'l, Inc.*, 605 F.3d 1039, 1045 (D.C. Cir. 2010) ("The District of Columbia has an interest in protecting its own citizens from being victimized by unfair trade practices and an interest in regulating the conduct of its business entities."). Indeed, the articulated purpose of the DCHRA is "to secure an end in the District of Columbia to discrimination for any reason other than that of individual merit, including, but not limited to, discrimination by reason of . . . sex." D.C. Code § 2-1401.01. While Missouri may have an interest in regulating companies that are incorporated in its state, it has a less direct interest in protecting workers in D.C. from sexual harassment, retaliation, and related tortious conduct—the relevant law and policy at issue here. *See Bledsoe v. Crowley*, 849 F.2d 639, 643 (D.C. Cir. 1988) ("The state where the defendant's conduct occurs has the dominant interest in regulating it." (cleaned up) (quoting *Biscoe v. Arlington Cnty.*, 738 F.2d 1352, 1361 (D.C. Cir. 1984))).

D.C. also has the "most significant relationship" to the controversy here. *Oveissi*, 573 F.3d at 842. The first two factors courts look to—"the place where the injury occurred" and "the place where the conduct causing the injury occurred"—point to D.C., where Rix was a shareholder and lost her job. *Id.*; ECF No. 1-2 ¶ 7. Rix alleges she was harassed in D.C. and several other places, but not Missouri. *See* ECF No. 1-2 ¶¶ 31–68. The third factor—the domicile of the parties—is a

wash, as Rix is a citizen of D.C., Polsinelli is a citizen of Missouri, and Dabiri and Scherzer are citizens of New York. *Oveissi*, 573 F.3d at 842; ECF No. 1-2 ¶¶ 17–20. And the fourth—"the place where the relationship, if any, between the parties is centered"—at least slightly favors D.C. *Oveissi*, 573 F.3d at 842. While Rix became a shareholder of the firm, which is based in Missouri, the complaint alleges she was recruited and hired to work in the firm's D.C. office and, while allegations indicate that Rix traveled to meet with partners influential to her practice with the firm in other places, there is no indication that the relationship was centered in Missouri beyond the formality of incorporation. ECF No. 1-2 ¶ 28.

The Court accordingly rejects the defendants' argument that Missouri law applies to Rix's state law claims and turns to whether she has plausibly alleged her claims under D.C. law.

### 1. The Complaint States A DCHRA Sexual Harassment Claim Against All Defendants (Count One)

Polsinelli and Dabiri do not contest that the complaint's first count states a claim for sexual harassment under the DCHRA, but Scherzer contends Rix fails to state a claim against him. ECF No. 13 at 4–6. The Court disagrees and concludes Rix has stated a claim.

Following amendments in 2022, the DCHRA defines harassment to include any conduct "that unreasonably alters an individual's terms, conditions, or privileges of employment or has the purpose or effect of creating an intimidating, hostile, or offensive work environment." D.C. Code § 2-1402.11(c-2)(2)(A). The Act further defines sexual harassment to include "conduct of a sexual nature that constitutes harassment," as well as "[s]exual advances, requests for sexual favors, or other conduct of a sexual nature where submission to the conduct is made either explicitly or implicitly a term or condition of employment or where submission to or rejection of the conduct is used as the basis for an employment decision affecting the individual's employment." D.C. Code § 2-1402.11(c-2)(2)(B). In determining whether conduct constitutes harassment, courts must

consider "the totality of the circumstances," including "(A) The frequency of the conduct; (B) The duration of the conduct; (C) The location where the conduct occurred; (D) Whether the conduct involved threats, slurs, epithets, stereotypes, or humiliating or degrading conduct; and (E) Whether any party to the conduct held a position of formal authority over or informal power relative to another party." D.C. Code § 2-1402.11(c-2)(3). "Conduct need not be severe or pervasive to constitute harassment and no specific number of incidents or specific level of egregiousness is required." *Id.*

The complaint plausibly alleges a sexual harassment claim against Scherzer under these standards. Rix alleges Scherzer "made at least nine separate requests to Rix for dinner and drinks— each overtly tied to his 'growing affection' for Rix"; "made several blatant sexual overtures towards Rix" at a dinner; "made suggestive and inappropriate remarks about Rix" during a firm retreat; "kissed her without her consent" before "incessantly . . . requesting to 'come back'" to her hotel room "throughout the night"; and later "made it clear that he expected to receive another kiss from Rix." ECF No. 1-2 ¶¶ 41, 49, 51, 66, 68. Rix also alleges that "the partners upon which her practice was dependent time and again attempted to condition 'working deals together' upon her willingness to succumb to their demands for a personal (sexual) relationship" and that Scherzer, who had been at Polsinelli since 2015 and is twenty years senior to Rix, "was a partner who would be influential in her advancement." *Id.* ¶¶ 31, 32, 55. Scherzer's conduct caused Rix to be "[n]ervous, scared, and under duress"; "[o]ffended and panicked"; "fear[ful] that rejecting [his and others'] advances would be fatal to her ability to build the practice for which she was hired"; and "uncomfortable" to the point of cancelling a trip with Scherzer to meet a client. *Id.* ¶¶ 11, 36, 66.

In sum, Rix alleges that Scherzer made repeated sexual advances over the course of more than a year at firm-related and other professional events, that he held informal power at the firm

relative to her, and that his conduct created a work environment that was intimidating, hostile, or offensive. Such allegations are sufficient to state a sexual harassment claim under the DCHRA. Indeed, such allegations would have been sufficient to state a claim even under the Act's previous, more demanding standard. *See Howard Univ. v. Best*, 484 A.2d 958, 981 (D.C. 1984) (finding plaintiff had stated a sexual harassment claim under the previous standard when the plaintiff alleged similar instances of "unwanted physical harassment and verbal propositions").

2. *The Complaint States A Claim Against Dabiri And Scherzer For Aiding And Abetting A DCHRA Violation (Count Three)*

Dabiri and Scherzer argue that the complaint's third count fails to state a claim for aiding and abetting violations of the DCHRA. They contend they cannot be liable for aiding and abetting where they are also alleged to have committed the underlying conduct. *See* ECF No. 8-1 at 31; ECF No. 13 at 6. The Court disagrees.

The DCHRA makes it "an unlawful discriminatory practice for any person to aid, abet, invite, compel, or coerce the doing of any of the acts forbidden under the provisions of this chapter or to attempt to do so." D.C. Code § 2-1402.62.  The D.C. Court of Appeals has recognized that if a law firm "unlawfully discriminated against the plaintiff as alleged, then the partners who carried out the allegedly discriminatory acts aided and abetted the employer's discrimination." *Wallace v. Skadden, Arps, Slate, Meagher & Flom*, 715 A.2d 873, 888 (D.C. 1998). Thus, partners who "personally engaged in discriminatory conduct" can be held liable under the DCHRA's aiding and abetting provision for aiding and abetting the firm's unlawful activity. *Id.*  The Court accordingly concludes Rix has alleged that, as partners of Polsinelli, Scherzer and Dabiri aided and abetted the firm in violating the DCHRA through their conduct.

3.  *The Complaint States An Intentional Infliction Of Emotional Distress Claim Against All Defendants (Count Seven)*

The defendants argue the complaint's seventh count fails to state a claim for intentional infliction of emotional distress, but the Court concludes Rix has plausibly alleged the required elements under D.C. common law.

To state a claim for intentional infliction of emotional distress, a plaintiff must allege "(1) extreme and outrageous conduct on the part of the defendant which (2) intentionally or recklessly (3) causes the plaintiff severe emotional distress." *Purcell v. Thomas*, 928 A.2d 699, 711 (D.C. 2007) (quoting *Best*, 484 A.2d at 985). In determining whether conduct is extreme and outrageous, courts "must consider: (1) applicable contemporary community standards of offensiveness and decency, and (2) the specific context in which the conduct took place." *King v. Kidd*, 640 A.2d 656, 668 (D.C. 1993). While a court must "determine, in the first instance, whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery," the case "should be submitted to the jury if reasonable people could differ on whether the conduct is extreme and outrageous." *Best*, 484 A.2d at 985. The D.C. Court of Appeals has further advised that "[c]reation of a hostile work environment by racial or sexual harassment may, upon sufficient evidence, constitute a prima facie case of intentional infliction of emotional distress." *Id.* at 986. In addition, repeated harassment "may compound the outrageousness of incidents which, taken individually, might not be sufficiently extreme to warrant liability." *Id.* (quoting *Boyle v. Wenk*, 392 N.E.2d 1053, 1056 (1979)).

Under these standards, Rix has alleged extreme and outrageous conduct. She alleges that "two influential shareholders in the Firm's international practice" who were "necessary resources of a successful practice" and "gatekeepers to [her] success" repeatedly harassed her over multiple years. ECF No. 1-2 ¶ 8. As discussed, she alleges Scherzer "made at least nine separate requests

10

to Rix for dinner and drinks—each overtly tied to his 'growing affection' for Rix"; "made several blatant sexual overtures towards Rix" at a dinner; "made suggestive and inappropriate remarks about Rix" during a firm retreat; "kissed her without her consent" before "incessantly . . . requesting to 'come back'" to her hotel room "throughout the night"; and later "made it clear that he expected to receive another kiss from Rix." ECF No. 1-2 ¶¶ 41, 49, 51, 66, 68. She alleges that Dabiri also repeatedly invited her dancing and to drinks or dinner, including to "boldly express a sexual interest" and make physical contact with her; at one professional event, he "insisted on a dance with Rix, during which he repeatedly touched her," leading Rix to "hid[e] in the bathroom to calm herself and avoid further advances. *Id.* ¶¶ 47, 58. Dabiri later insisted on sharing a car with Rix and, "[o]nce inside the car, Dabiri made sexually charged passes at Rix," causing Rix to be "so distraught" and "overwhelmed" that she "could not attend meetings the next day." *Id.* ¶ 58. As stated above, Rix also alleges that "the partners upon which her practice was dependent time and again attempted to condition 'working deals together' upon her willingness to succumb to their demands for a personal (sexual) relationship." *Id.* ¶ 55. The Court has already concluded Rix's allegations state a claim for sexual harassment under D.C. law, which Polsinelli and Dabiri do not contest, and the repeat nature of the harassment further supports the conclusion that Rix has stated a claim for intentional infliction of emotional distress. *See Best*, 484 A.2d at 986 (holding that the plaintiff "made out a prima facie case of intentional infliction of emotional distress insofar as she demonstrated repeated 'sexual harassment' by the man who was her supervisor," particularly in light of the public policy animating the DCHRA).

The complaint also alleges the remaining elements. None of the defendants dispute the complaint alleges they acted "intentionally or recklessly," and the complaint therefore satisfies the second element. *Purcell*, 928 A.2d at 711. And, while Scherzer makes a conclusory argument that

Rix failed to plead that his alleged conduct resulted in severe emotional distress, she has clearly done so. The complaint is replete with specific allegations that Rix "suffered and continues to suffer emotional . . . harm" and "humiliation and severe emotional distress" from the alleged conduct; that she was "[n]ervous, scared, and under duress" when "Scherzer insisted [on] following [her] to her hotel room"; and that she was "[o]ffended and panicked" when Scherzer then "kissed her without consent." ECF No. 1-2 ¶¶ 16, 66, 123. The complaint accordingly states a claim for intentional infliction of emotional distress.

### 4. The Complaint States A Claim For Negligent Infliction of Emotional Distress Against Polsinelli (Count Eight)

Polsinelli argues the complaint's eighth count fails to state a claim for negligent infliction of emotional distress, but the Court concludes Rix plausibly alleges this claim as well.

To state a claim for negligent infliction of emotional distress, a plaintiff must allege "(1) the plaintiff was in the zone of physical danger, which was (2) created by the defendant's negligence, (3) the plaintiff feared for [their] own safety, and (4) the emotional distress so caused was serious and verifiable." *Harris v. U.S. Dep't of Veterans Affs.*, 776 F.3d 907, 915 (D.C. Cir. 2015). Polsinelli offers only a perfunctory assertion that Rix failed to plead this claim: Polsinelli recites the elements, says that "[g]enerally speaking, courts impose liability for the negligent infliction of emotional distress only in limited situations," and says that "[t]his is not one of those situations." ECF No. 8-1 at 31. This assertion is made without citation to legal authority or analysis. Polsinelli otherwise makes factual assertions that do not appear in, or conflict with, Rix's complaint, even though the Court must accept the complaint's factual allegations at this stage. *Iqbal*, 556 U.S. at 678. Such an argument is far too undeveloped to be a basis for dismissal. *See, e.g.*, *Robinson v. Farley*, 264 F. Supp. 3d 154, 162 (D.D.C. 2017) (declining to address "undeveloped arguments for dismissal"); *Doe v. Siddig*, 810 F. Supp. 2d 127, 137–38 (D.D.C.

2011) (same) (citing *Wash. Legal Clinic for the Homeless v. Barry*, 107 F.3d 32, 39 (D.C. Cir. 1997)).

The complaint plausibly alleges the elements of negligent infliction of emotional distress. As stated above, Rix alleges she was repeatedly subject to sexual comments, advances, and physical touching by two Polsinelli partners at professional events, both of whom were more senior in their careers and identified as important to her success at the firm. Her allegations include an instance in which the conduct drove her to hide in a bathroom "to calm herself and avoid further advances" and repeated efforts to join her in her hotel room, including a successful one in which a partner "kissed her without her consent" while she was "[n]ervous, scared, and under duress." ECF No. 1-2 ¶¶ 58, 66. Rix further alleges Scherzer and Dabiri were "emboldened by the Firm's culture of discrimination" and that when she reported their misconduct to Polsinelli, it "fired her without cause" and "without conducting an investigation." *Id.* ¶¶ 14, 57. And, in addition to the emotional distress Rix alleges she suffered from the conduct above, she specifically alleges that Polsinelli's failure "to adequately consider, investigate, and resolve [her] complaints of harassment . . . is directly responsible for [her] emotional distress. *Id.* ¶ 130. These allegations state a claim for negligent infliction of emotional distress. *See Tan v. Compass Grp. USA, Inc.*, No. 23-cv-00224, 2023 WL 6975935, at *2 (D.D.C. Oct. 23, 2023) (holding that plaintiff's allegations were sufficient to state a negligent infliction of emotional distress claim where plaintiff alleged "that one of her co-workers assaulted her and another sexually harassed her without consequence, causing her to fear for her physical safety" (citations omitted)).

### B. Rix Is Not Required To Arbitrate Her Sexual Harassment Dispute

After their arguments for dismissing the complaint, Polsinelli and Dabiri argue that Rix's employment agreement requires that some of her claims go to arbitration. *See* ECF No. 8-1 at 32–36. They concede that any clause requiring arbitration of Rix's Title VII hostile work environment

claim—premised on sexual harassment—is unenforceable under the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act ("EFAA"). ECF No. 8-1 at 33; *see* Pub. L. No. 117-90, 136 Stat. 26 (2022) (codified at 9 U.S.C. §§ 401–402). However, they contend that Rix's Title VII retaliation claim, DCHRA claims, and D.C. tort claims must be arbitrated. *See* ECF No. 8-1 at 12, 33–36. Rix responds that the EFAA bars any agreement to arbitrate those claims as well. *See* ECF No. 19 at 25–27. This question about the scope of the EFAA appears to be one of first impression in this District.[3]

The Federal Arbitration Act mandates that agreements to arbitrate are "valid, irrevocable, and enforceable." 9 U.S.C. § 2. In 2022, Congress enacted the EFAA, which states that when it comes to a dispute about sexual assault or sexual harassment, "no predispute arbitration agreement . . . shall be valid or enforceable with respect to a case which is filed under Federal, Tribal, or State law and relates to the sexual assault dispute or the sexual harassment dispute." 9 U.S.C. § 402(a). Courts in other jurisdictions have generally read the text of this provision to mean what it says—when a plaintiff alleges conduct that relates to a sexual assault or sexual harassment dispute, any predispute arbitration clause is rendered unenforceable as to the entire "case." *See, e.g.*, *Johnson v. Everyrealm, Inc.*, 657 F. Supp. 3d 535, 559 (S.D.N.Y. 2023); *Delo v. Paul Taylor Dance Found., Inc.*, 685 F. Supp. 3d 173, 180 (S.D.N.Y. 2023); *Diaz-Roa v. Hermes L., P.C.*, 757 F. Supp. 3d 498, 532 (S.D.N.Y. 2024); *Baldwin v. TMPL Lexington LLC*, No. 23-cv-9899, 2024 WL 3862150, at *7–8 (S.D.N.Y. Aug. 19, 2024); *Turner v. Tesla, Inc.*, 686 F. Supp. 3d 917, 925 (N.D. Cal. 2023); *Molchanoff v. SOLV Energy, LLC*, No. 23-cv-653, 2024 WL 899384, at *4 (S.D. Cal. Mar. 1, 2024); *Watson v. Blaze Media LLC*, No. 3:23-cv-0279-B, 2023 WL 5004144, at *2 (N.D. Tex.

---

[3]    Polsinelli and Dabiri also argue that the EFAA does not bar arbitration of Rix's breach of contract claim and it therefore must be arbitrated. However, Rix voluntarily dismissed that claim and it is no longer before the Court.

Aug. 3, 2023). Applying that interpretation, the text clearly resolves this case—the defendants concede that Rix asserts a Title VII claim that relates to sexual harassment and therefore the arbitration clause is not enforceable with respect to this case.

Here, any predispute agreement to arbitrate is also unenforceable under the EFAA's text for a second, narrower reason: each remaining claim itself "relates to . . . the sexual harassment dispute." 9 U.S.C. § 402(a). There is no question that Rix's complaint asserts a "sexual harassment dispute"—as mentioned, the defendants concede Rix's Title VII hostile work environment claim is premised on such a dispute. *See id.* § 401(4) (defining that term as "a dispute relating to conduct that is alleged to constitute sexual harassment under applicable Federal, Tribal, or State law"). Rix's retaliation claim that she was fired "when she reported to Polsinelli that she had been the victim of harassment, discrimination, and a hostile work environment," ECF No. 1-2 ¶ 109, her DCHRA claims for committing or aiding and abetting sexual harassment and for retaliation, and her claims of intentional and negligent infliction of emotional distress premised on the very same allegations of sexual harassment all clearly "relate[] to . . . the sexual harassment dispute." 9 U.S.C. § 402(a). Indeed, these claims themselves constitute "a dispute relating to conduct that is alleged to constitute sexual harassment*." Id.* § 401(4).

Polsinelli and Dabiri do not attempt to explain how Rix's DCHRA or D.C. tort claims do not relate to, or do not themselves constitute, a sexual harassment dispute. They argue that Rix's Title VII retaliation claim must be arbitrated despite the EFAA because her retaliation claim "does not rise or fall on" her hostile work environment claim and therefore is not "inexorably intertwined with [her] sexual harassment claims." ECF No. 8-1 at 34; ECF No. 22 at 10. That is true as far as it goes. Rix's Title VII retaliation and hostile work environment claims are independent claims and have their own elements, and Rix may succeed or fail in proving one claim irrespective of the

other. But the test for whether the EFAA applies is not whether claims are "inexorably intertwined" or "rise or fall" together; it is whether the claim is or "relates to" a sexual harassment dispute. 9 U.S.C. § 402(a). And on that test, the claim of retaliation for reporting sexual harassment is plainly covered. *See Olivieri v. Stifel, Nicolaus & Co., Inc.*, 112 F.4th 74, 92 (2d Cir. 2024) (concluding that "retaliation resulting from a report of sexual harassment is 'relat[ed] to conduct that is alleged to constitute sexual harassment'" (quoting 9 U.S.C. § 401(4))); *Johnson*, 657 F. Supp. 3d at 559 (same); *Turner*, 686 F. Supp. 3d at 928 (same).

## III.    Conclusion

For these reasons, the Court denies the motions to dismiss and the motion to compel to arbitration. A separate order accompanies this memorandum opinion.

_____

AMIR H. ALI
United States District Judge

Date:    September 18, 2025